UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

BOSSARD IIP, INC.,
ZURICH-VERSICHERUNGSGESELLSCHAFT,

      Plaintiffs,

      v.                                      Case No. 03-C-1434

SPECIAL FASTENERS ENGINEERING
COMPANY, LTD,
TRIFAST PLC,

      Defendants.

---

## DECISION AND ORDER GRANTING TRIFAST, PLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Trifast, PLC, is seeking dismissal of the complaint in this action for lack of personal jurisdiction. Trifast, an English holding company, maintains that it has no contacts with Wisconsin and that it is not the alter ego of defendant Special Fasteners Engineering Company, Ltd. (SFE). Limited discovery into the corporate relationship between SFE and Trifast with leave of the court, and Trifast's motion is now ready for decision. For the reasons set forth below, the motion will be granted.

## LEGAL STANDARD

In ruling on a motion to dismiss for lack of personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). Moreover, the pleadings and affidavits are to be considered in the light most favorable to the plaintiff. *See Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir. 1984). When

deciding such a motion solely on the basis of the parties' written materials, the plaintiff need only show a prima facie case of personal jurisdiction and is entitled to have all inferences about material jurisdictional facts resolved in its favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)

## BACKGROUND

Plaintiff Bossard IIP, Inc., an Iowa corporation, distributes industrial fasteners and maintains its principal place of business at 3801 West Green Tree Road, Milwaukee, Wisconsin. (Amended Complaint, ¶ 1) In 2002, Bossard entered a contract to purchase screws from SFE, a Taiwanese company, a manufacturer of fasteners. (Amended Complaint ¶¶ 6,7) Pursuant to the Agreement, SFE made two separate shipments of the screws to Bossard on November 8, 2002. (Amended Complaint, ¶¶ 8,9)

Bossard supplied the screws to John Deere for installation into 50,733 of its LT100 Series Lawn Tractors. (Amended Complaint, ¶¶ 12, 13) Plaintiffs allege that on or about January 23, 2003, John Deere discovered that the installed screws were fractured and/or otherwise failed. (Amended Complaint, ¶ 14) John Deere presented a claim to Bossard for damages in the amount of $3.4 million for costs and expenses associated with the removal and replacement of the fractured and/or failed screw and repair of the involved tractors. (Amended Complaint ¶¶ 14, 15) Bossard gave notice of the claim to its insurer, plaintiff Zurich-Verischerungsgellschaft. (Amended Complaint, ¶ 15) Zurich paid John Deere $1.5 million in partial satisfaction of the claim and it is anticipated that Zurich may pay an additional $1.9 million to John Deere. (Amended Complaint, ¶ 16) Further, Bossard alleges that it has sustained an uninsured loss of $476,278.75. (Amended Complaint, ¶ 17) Consequently, Bossard and Zurich-Verischerungsgellschaft have sued

SFE and Trifast, SFE's parent corporation, for breach of contract (Count I, IV), breach of the implied warranties of merchantability and fitness for a particular purpose (Counts II, III, and IV) and seek to hold the parties jointly and severally liable.

At paragraphs 3 and 5 of the Amended Complaint, plaintiffs allege that Trifast was doing substantial business in the State of Wisconsin, and that SFE is the wholly owned subsidiary of Trifast. The affidavits filed in support of the motion to dismiss show that Trifast is a public limited company organized under the laws of England and Wales, with its principal place of business at Trifast House, Bellbrook Park, Uckfield, East Sussex, England. (Aff. Lawson, ¶ 3; Aff. Barker, ¶ 3) Moreover, Stuart Lawson, Group Finance director of Trifast PLC, avers that Trifast, a non-holding trading company, does not engage in the manufacture, sale or distribution of goods. (Aff. Lawson, ¶ 3)

Trifast has never maintained a place of business in Wisconsin, or paid taxes to Wisconsin. (Aff. Lawso n, ¶ 4; Aff. Barker ¶ 7) Further, Trifast has not employed agents to solicit business or sell a product in the State of Wisconsin, and was not a party to the Agreement. (Aff. Barker, ¶ 8) Also, Trifast has never served as an officer, director, trustee or manager of a corporation under the laws of or having a place of business within the State of Wisconsin. (Aff. Lawson, ¶ 5) And, Trifast has no assets in the State of Wisconsin. (Aff. Barker, ¶ 6)

Rather, Trifast is the parent company of 15 subsidiaries and employs 12 people in England. However, it has no employees in the United States. (Aff. Barker, ¶ 4) Trifast owns 100% of the issued share capital of Trifast Overseas Holdings Limited. In turn, Trifast Overseas Holdings Limited owns 100% of the issued share capital of Trifast Holdings BV, a company based in the Netherlands. On the other hand, TR Holdings BV

3

owns 100% of the issued share capital in TR Asia Investment Holdings PTE Limited, a Singapore based company. And, TR Asia Investment Holdings PTE Limited owns 100% of the issued share capital of SFE. (Aff. Lawson, ¶ 7) Hence, Trifast and SFE have three levels of intermediary companies between them.

Trifast purchased SFE in May 2001. At that time, SFE was a successful sales operation with its own customer base, which included Bossard. (Aff. Lawson, ¶ 9; Aff. Barker, ¶ 10) Trifast has one director, Steven Tan, in common with SFE, but otherwise there is no overlap of directors, officers or personnel. (Aff. Barker, ¶ 11) In addition, the Board of Directors of Trifast operates independently of the Board of Directors of SFE. (Aff. Barker, ¶ 12) SFE and Trifast have always maintained separate books and records and Trifast strictly observes its legal requirements. (Aff. Lawson, ¶¶ 10, 12)

SFE is independently capitalized, manages its own assets, and is responsible for its own operating expenses or losses. In the year ending March 31, 2002, SFE had shareholder funds of $4,511,000. (Aff. Lawson, ¶ 13) Also, SFE and Trifast have always maintained separate payrolls, benefits and retirement packages for their employees. (Aff. Lawson, ¶ 14) Moreover, Trifast has no involvement in the day to day activities of SFE. (Aff. Barker, ¶ 14)

TR Fastenings, a subsidiary of Trifast, owns the registration to the domain name, trfastenings.com, and the copyright for the contents. (Second Aff. Lawson, ¶ 2, 4) TR Fastenings contracted with a media company in the UK to create the content for the website. (Plaintiffs' Ex. E, p. 116)

The website was designed primarily as a support tool for existing customers. (Plaintiffs' Ex. F) By registering, customers and suppliers are able to access engineering

databases. (Plaintiffs' Exs. E and G) Between January 4, 2004, and December 7, 2004, 18 people from 15 companies in Wisconsin registered in trfastenings.com. (Plaintiffs' Ex. H) None of the 18 Wisconsin registered users made purchases from TR Fastenings. (Second Aff. Lawson, ¶ 9)

The website does not accept registrations from public domain e-mail addresses. (Plaintiffs' Ex. F) Without a business e-mail address, one must e-mail sales@trfastenings.com explaining what the company does and why it needs accesss. (Plaintiffs' Ex. F)

Once inside the website, there is a Vendor Management System and a screen where customers can access delivery details of current orders through trfastenings.com. (Plaintiffs' Ex. G) Further, trfastenings.com provides an e-mail address where one can reach the trfastenings sales department to submit a purchase order or communicate with a sales representative. The website provides phone numbers and e-mail addresses to reach locations in California, Arizona and Mexico. A questionnaire on the website serves as a means for suppliers to provide detailed information about their businesses. (Plaintiffs' Ex. K) Also, a customer or supplier can order a company newsletter on trfastenings.com. (Plaintiffs' Ex. F)

The website includes a drop down menu, "TR Investors." Some of the information for that section came from Trifast as the publicly owned and traded parent company of TR Fastenings. The information on the Financial review page includes information from Trifast's annual report. The Group Finance Director of Trifast caused the company that prints the annual reports to send a copy to the marketing director at TR

5

Fastenings, who then had the information pulled from that report to update the website. (Second Aff. Lawson, ¶ 5)

A search on the internet for "Trifast" links the user to the "Trifast plc investor's homepage" on trfastenings.com. From that page, the user can link to LEGAL NOTICES and then select the privacy policy or legal notice. The legal notice states, in relevant part:

> Welcome to the Trifast plc ("Trifast") website. Please read the following notice carefully as use of or access to this website and the information or services we provide by or through this website are subject to the terms of this notice.
> Information and options on the Trifast website is for the purpose of providing information about Trifast and its group of companies and the products and services that we offer. We have taken all reasonable efforts to ensure that information which is provided on our website is accurate at the time of writing, however, we do not warrant its accuracy and there may be inadvertent and occasional errors or omissions for which we disclaim all liability. Links to other websites are provided for your convenience. We are not responsible for and accept no liability for the content of any external websites which may be accessed from this website.

(Plaintiffs' Ex. D) Trifast posted a legal notice on the website because the investor pages contained financial statements related to the financial performance of Trifast. (Second Aff. Lawson, ¶ 6)

## ANALYSIS

In a diversity case such as this, the district court has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). The extent of this jurisdiction depends on the scope of the Wisconsin long-arm statute, Wis. Stat. § 801.05, subject to federal constitutional limits. *Nelson v. Bulso*, 149 F.3d 701, 703 (7th Cir. 1998). Plaintiff has the burden of proving the existence of personal

6

jurisdiction. *Mid-America Tablewares*, *Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1358-59 (7th Cir. 1996).

> Wisconsin's long-arm statute provides, in relevant part:
>
> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 801.11 under any of the following circumstances:
>
> (1) LOCAL PRESENCE OR STATUS. In any action whether arising within or without this state, against a defendant who when the action is commenced:
>
>> (a) Is a natural person present within this state when served; or
>> (b) Is a natural person domiciled within this state; or
>> (c) Is a domestic corporation or limited liability company; or
>> (d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.
>
> . . .
>
> (3) LOCAL ACT OR OMISSIONS. In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.

Wis. Stat. § 801.05.

Plaintiffs contend that the motion to dismiss must be denied because: (1) § 801.05(1)(d) of the Wisconsin long-arm statute provides that a court of the state has jurisdiction over a person when a foreign defendant engaged in substantial and not isolated activities within this state; (2) the parent-subsidiary relationship confers jurisdiction where the subsidiary carries on sufficient activities in the state; (3) Trifast's contacts with Wisconsin through its website, Trfastenings.com and through the activities of SFE, are substantial and not isolated within the meaning of § 801.05(1)(d); and (4) Trifast's parent-

7

subsidiary relationship with SFE, along with SFE's contract with Bossard for the sale and purchase of millions of fasteners, satisfy the minimum contacts test.

Five factors are relevant to the question whether defendants' Wisconsin contacts meet the criteria of Wis. Stat. § 801.05(1)(d): (1) the quantity of contacts, (2) the nature and quality of the contacts, (3) the source of the contacts and their connection with the cause of action, (4) the interests of the State of Wisconsin and (5) the convenience of the parties. *Nagel v. Crain Cutter Co.*, 50 Wis.2d 638, 648-50, 184 N.W.2d 876 (1971). That SFE is a subsidiary and that another subsidiary operates a website linking to Trifast is insufficient.

To assess the quantity, nature and the source of the contacts, plaintiffs ask this court to disregard that Trifast is a separate legal entity. However, there is no evidence that Trifast has any control over the daily operations of SFE, or that Trifast otherwise disregarded corporate formalities. Trifast's only connection to this state is the operation of a website by TR Fastenings, which is another subsidiary of Trifast. In the absence of other indicia that would support piercing Trifast's veil of limited liability, the degree of control demonstrated by the plaintiffs is insufficient.

By itself, the existence of a parent-subsidiary relationship is insufficient to support personal jurisdiction over a nonresident parent whose subsidiary has insufficient contacts with the forum state. *See Cannon Mfg. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S. Ct. 250, 69 L. Ed. 634 (1925); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). Courts begin with the presumption of corporate separateness. *See id.* at 465. This presumption can be rebutted only if "there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent . . . ." *IDS Life Ins.*

*Co. v. SunAmerican Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998). The Seventh Circuit Court of Appeals has emphasized that "[p]arents of wholly owned subsidiaries necessarily control, direct and supervise the subsidiaries to some extent" but anything less than the degree of control necessary to pierce the parent corporation's veil of liability is insufficient to establish personal jurisdiction over the parent. *Purdue Research*, 338 F.3d at 788, n. 17 (*quoting IDS*, 136 F.3d at 540).

Here, plaintifs have no evidence of the type of dominating control contemplated by Seventh Circuit case law. Plaintiffs have asked this court to apply the more lenient standard of *Brunswick Corp. v. Suzuki Motor Comapny, Ltd., et al.*, 575 F. Supp. 1412, 1416 (E.D. Wis. 1983). However, to suggest that this court has rejected the corporate law/alter ego standard set forth in *Canon* is a misstatement. This court is obligated to follow the law of the circuit, and that law has been set forth in *Purdue Research,* 338 F. 3d at 788, n. 17, *Central States, Southeast and Southwest Areas Pension Fund*, 230 F.3d at 943, *and IDS Life Ins. Co.,* 136 F.3d at 540. As the Seventh Circuit stated in *Central States*:

> Though we are mindful of the Supreme Court's admonition that "mechanical" tests generally should not be relied upon in determining when personal jurisdiction is constitutional, *Burger King*, 471 U.S. at 478, 105 S. Ct. 2174, the Court itself has suggested this rule, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary."). We join other courts in finding that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact. *See, e.g., Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273- 74 (6th Cir. 1998); *Miller v. Honda Motor Co.*, 779 F.2d 769, 771-72 (1st Cir.1985); *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir.1985); *see also Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S. Ct. 2569, 53 L. Ed.

> 2d 683 (1977) (holding that ownership of shares in a corporation located in a particular forum is not purposeful availment of that forum); *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37, 45 S. Ct. 250, 69 L. Ed. 634 (1925) (holding, though not on constitutional grounds, that jurisdiction over a subsidiary does not provide for jurisdiction over the parent where the two are separate entities).

*Id.*, 230 F.3d at 943.

Also, plaintiffs cite *Morris Material Handling, Inc. v. KCI Konecranes PLC*, 334 F. Supp. 2d 1118 (E.D. Wis. 2004). However, the plaintiff in *Morris* brought the case on diversity as well as federal question grounds. Unlike a diversity case where the court has jurisdiction only if the state in which it sits would have jurisdiction, a federal question case requires a determination as to whether haling the defendant into court meets with due process concerns and that the defendant is amenable to process from the court. *United States v. DeOrtiz*, 910 F.2d 376, 381-82 (7th Cir. 1990). The court held that the defendant in *Morris* did not have sufficient contacts to satisfy Wisconsin's long-arm statute in light of due process concerns. Specifically, the operation of a website did not establish that the defendant was involved in "substantial and not isolated activities in this state" for purposes of general jurisdiction. *Id.*, 334 F. Supp. 2d at 1121, n. 1. Rather the website provided a basis for jurisdiction in the federal question action because the court was satisfied that the defendant had sufficient minimum contacts. *Id.*, 334 F. Supp. at 1123-1126.

Here, the plaintiffs assert that Trifast owns the website, but the only evidence supporting the claim is the legal notice posted by Trifast on the website. Unlike the defendant in *Morris*, Trifast does not own the contents of or copyright to the website. Rather, the uncontroverted evidence establishes that TR Fastenings owns the copyright and the registration for the domain name, and that TR Fastenings contracted for and

10

maintains the website.  And, while customers may register and view design specifications on the website, TR Fastenings has never sold any product or service to anyone in Wisconsin through its website or otherwise.  Hence, jurisdiction is not appropriate under any provision of Wisconsin's long-arm statute.  Therefore,

IT IS ORDERED that defendant Trifast, PLC's motion to dismiss for lack of personal jurisdiction is granted.

Dated at Milwaukee, Wisconsin, this 7th day of June, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

11

Case 2:03-cv-01434-CNC   Filed 06/07/05   Page 11 of 11   Document 50